# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-80039-cr-RLR

**UNITED STATES OF AMERICA**

**V.**

**SUZANNE ELLEN KAYE,**

      **Defendant.**

_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DIMISS INDICTMENT

The United States, through counsel, hereby respectfully submits the following response in opposition to the Defendant's Motion to Dismiss Indictment. The Defendant argues that the Indictment is legally insufficient because the Defendant's alleged statements are protected by the First Amendment and fail to constitute a true threat criminalized by 18 U.S.C. § 875(c). For the reasons set forth in more detail below, this Court should deny the Motion because: (1) the Defendant's motion is not cognizable as a motion to dismiss because the issues presented are properly decided by a Rule 29 motion or submitted to the jury, and (2) the threats charged in the Indictment are true threats, which are unprotected by the First Amendment.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 16, 2021, the FBI received an online tip that the defendant had an account on Facebook that posts "anti-Biden" and "anti-Democratic" statements.  The tipster further reported that the defendant claimed she was at The United States Capitol in Washington, D.C., on January 6, 2021, and that she may have additional information.  The FBI conducted open source media

checks of the Facebook account which did not reveal any posts related to her activity at The Capitol on January 6, 2021.

Based on public source information, agents learned that the defendant's last known address was in Lake Worth, Florida.  On January 28, 2021, two FBI agents responded to that address to interview her about any illegal activity that occurred at The Capitol on January 6, 2021.  While at the residence, agents observed numerous notes on the exterior of the apartment door, which led them to believe that the apartment had likely been unoccupied for an extended time.

Later that day, agents made telephonic contact with the defendant and informed her of their interest in interviewing her about her travel to Washington, D.C. on January 6, 2021.  The defendant asked if they had proof that she traveled to Washington, D.C.  The agents stated that the FBI would like to interview her about her travel.  The defendant denied having traveled to Washington D.C., but claimed she was aware of individuals who did travel there.  She agreed to speak with the FBI and provided her current address in Boca Raton, Florida.  She further indicated that she was retired and had plenty of time to talk but needed to be interviewed at her residence because she was not able to drive.  The agents stated that they would stop by later that day to speak to her.  Unfortunately, they were not able to do so.  The agents called her thereafter and apologized for not being able to come to her house as planned.  They told her that they would call her again to let her know when they would be able to return.

On February 8, 2021, the FBI received another online tip from an individual who provided a link to a video posted to the defendant's known Facebook page.  The tipster claimed in the online tip that the video was a threat to shoot the FBI.

On February 9, 2021, the FBI reviewed the defendant's Facebook page titled "ANGRY Patriot Hippie" which was uploaded on January 31, 2021.  The video was captioned, "Fuck the

FBI!!"  In this 50 second video, the defendant is sitting at a table inside an unknown residence. She first took a drink from an almost empty bottle of Whiskey.  She then announced to her audience that the FBI contacted her because they want to talk to her about her visit to The Capitol on January 6, 2021.  She stated that she told them that they could not come talk to her unless she has counsel, and since she cannot afford counsel, they will have to arrest her so she can get counsel appointed to her.  She then accused the FBI of spending four years "persecuting a three-star general based on no evidence, you think I am going to let you come fucking talk to me?  You're out of your mother fucking mind, Bro."  Defendant then told her audience that she will "exercise my second amendment right to shoot your fucking ass if you come here." On the same date, the FBI reviewed the defendant's known Instagram and TikTok accounts and determined that she uploaded the same video to both social media platforms on January 31, 2021.

On February 15, 2021, the Honorable Bruce Reinhart, Magistrate Judge for the Southern District of Florida, signed a criminal complaint and arrest warrant charging the Defendant with making an interstate communication that contained a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).  On March 23, 2021, the Defendant was indicted by a Grand Jury sitting in the Southern District of Florida for the same offense.  The Indictment alleges that the defendant threatened to injure agents at the FBI by posting a video on social media platforms through the internet that stated that she will "shoot you're [expletive] ass if you come here."  Trial in this matter has not yet been scheduled.

## II. <u>Argument</u>

### a. <u>The Defendant's Claims Are Not Cognizable as a Motion to Dismiss.</u>

Defendant argues that her social media posts, including her threat to shoot the FBI if they come to her home, is protected by the First Amendment and was mere hyperbolic political speech. True threats are not protected by the First Amendment. *United States v. Stevens*, 881 F.3d 1249, 1253 (10th Cir. 2018). Generally, in the pre-trial stage, the Court inquires whether a reasonable jury could conclude that Defendant issued a true threat. *Id.* "[I]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (whether a statement amounts to a true threat is a question for the fact finder). However, "absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." *Wheeler*, 776 F.3d at 742. A court may dismiss the charges against a defendant "[i]f there is no question that a defendant's speech is protected by the First Amendment." *Viefhaus*, 168 F.3d at 397.

Here, a reasonable jury could conclude that the Defendant communicated a true threat. In her online video, she told the FBI that she will "exercise my First Amendment right on my freedom of speech and my Second Amendment right to shoot your fucking ass if you come here." A reasonable jury could conclude that the defendant intended for FBI agents to feel threatened, or she knew that by posting the video agents would view it as a threat. *Elonis v. United States*, 575 U.S. 723 (2015) "[T]he mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat"). In *Elonis*, the defendant made a series of threatening communications on Facebook. The defendant was convicted at trial and appealed his conviction.

4

He challenged the indictment and his conviction on the grounds that the government failed to prove that he intended to make a threatening communication.  The Supreme Court agreed, holding that the government's failure to allege the intent of the defendant, a material element of the indictment, required a finding that the indictment is legally insufficient. *Elonis*, 575 U.S. at 734 (citations omitted) ("'The mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with it.'").

In a case very similar to the instant matter, the District Court of New Mexico recently denied a defendant's motion to dismiss an indictment charging him with transmitting a threatening communication, in violation of 18 U.S.C. § 875(c). *United States v. Carrillo*, 2020 WL 231055 (D.N.M., January 15, 2020).  The alleged threat was posted as a comment on a Facebook threat and read as follows: "You Bitches Want a Physical Civil War … I'm Game … I'll bring My Farm Implements and They will Never find your Bodies … AND for Fun I'll BURN Every ACLU Office in the State … GO TRUMP GO.!" *Id.* at 1.  In a Twitter post directly to the former President of the United States, the defendant wrote: "@realDonaldTrump, YOU Say YOU are going to DEPORT Thousands … People are Saying,; I'll believe it when I see it … Personally When Civil War Starts … I'm going to Burn Down EVERY ACLU Office in New Mexico." *Id.*

Like the Defendant in the instant matter, Carrillo claimed that his online communications were hyperbolic political speech and, thus, protected by the First Amendment.  The Court disagreed. *Id.* at 2.  It found that a reasonable jury could conclude that he communicated a true threat. *Id.*  Such communications are not constitutionally protected.

The District Court in New Mexico ruled similarly in *United States v. Nissen*, 432 F.Supp 1298 (D.N.M., January 9, 2020).  In *Nissen*, the defendant filed a motion to dismiss the indictment charging him with making a threatening communication in violation of Section 875(c).  Among

5

the alleged threats was a voicemail message that Nissen left for the New Mexico state police wherein he voiced his displeasure over having received traffic summons about 30 minutes earlier. In an agitated and aggressive voice, Nissen said, "[t]he next time someone violates me like that on the road, I'm gonna put a bullet in that fucking pig's head … He violated by Fourth Amendment constitution, he violated my Second and my First Amendment and the next time he does it I'm gonna plea the Fifth, but next time I'm gonna take my revolver out and put that motherfucker drop dead." *Id.* at 1304.

Nissen claimed that his message was not a true threat, but rather political speech, exaggeration, or something said in a joking manner that is protected by the First Amendment. *Id.* at 1307.  Also like the Defendant in the instant case, Nissen analogized his comments to those at issue in *Watts v. United States*, 394 U.S. 705 (1969) (per curium), in which the defendant stated, at a political rally, that, "'if they ever make me carry a rifle, the first man I want to get in my sights is L.B.J.,'" then-president of the United States. *Id.* The court denied Nissen's motion to dismiss, finding sufficient evidence for a reasonable jury to conclude that he intended to communicate a threat and that a reasonable person would construe his statements as a threat. *Id.* at 1323-1324.

This narrow approach to one's ability to dismiss an indictment pre-trial based on a First Amendment claim of political speech is consistent with our courts' long-standing recognition that the sufficiency of an indictment is determined from its face. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). To be valid, an indictment "must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." *Id.*; *see also United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("The indictment is sufficient if it charges in the language of the statute."). It must also enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent

prosecution for the same offense. *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002). In considering a pretrial motion to dismiss, federal courts read indictments in the light most favorable to the United States and assume that all factual allegations are true. *Sharpe*, 438 F.3d at 1258-1259.

At the pre-trial stage, a court's review of an indictment is "very limited." *United States v. Ferguson*, 142 F. Supp. 2d 1350, 1354 (S.D. Fla. 2000). The Court may dismiss an indictment that (1) contains a defect as a charging instrument, or (2) is based on a purely legal question, such as the constitutionality of a statute. *Id.* Any arguments or issues that require consideration of the facts underlying the prosecution are not the proper subject for a motion to dismiss. *Id.* Rather, an issue that depends upon the facts of a case is properly addressed through a motion for judgment of acquittal or submitted to the jury. *Salman*, 378 F.3d at 1268; *see also United States v. Brantley*, 461 F. App'x 849, 851 (11th Cir. 2012) (reversing dismissal of indictment where the district court predicted what the trial evidence would show).

Linguistic precision and literary elaboration are not required in an indictment. *United States v. deVegter*, 198 F.3d 1324, 1331 (11th Cir. 1999). "Instead, an indictment may be short and simple—its allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense." *Id.* (citing *United States v. Adkinson*, 135 F.3d 1363, 1375 n. 37 (11th Cir. 1998) ("An indictment need do little more than track the language of the statute charged to be sufficient.")).

The Indictment in the instant case is legally sufficient. It tracks the language in the statute, briefly describes the facts of the commission of the offense, and alleges the Defendant's "mens rea or facts from which the intent" of the Defendant's threat "can be inferred." *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) ("*Martinez II*").

Prior to the decision in *Elonis* described above, the Eleventh Circuit held that that an indictment, charging a violation of Title 18, United States Code, Section 875(c), was legally sufficient without alleging the defendant's intent to make the threatening communication. *United States v. Martinez*, 736 F.3d 981 (11th Cir. 2013) ("*Martinez I*"). The indictment at issue, in *Martinez I*, alleged that the defendant "did knowingly transmit… that is an email form response, to WFTL Radio, which communication contained a true threat to injure the person of another…" *Id*. After the *Elonis* decision, the Eleventh Circuit overturned its decision in *Martinez I*. And, in *Martinez II*, the Eleventh Circuit vacated the defendant's conviction, based on the failure to allege the defendant's intent to make a threatening communication. *Martinez II*, 800 F.3d at 1295.

The Government has properly alleged the Defendant's subjective intent in the Indictment. It alleges that the Defendant "did knowingly transmit in interstate commerce a communication containing any threat to injure the person of another, that is, agents from the Federal Bureau of Investigation…" This allegation places the Defendant's intent at issue and requires the Government to prove at trial that she either intended to make a threatening communication or knew that the communication would be interpreted as a threat. *See Elonis,* 135 S.Ct. *2001; United States v. Dierks*, 978 F.3d 585, 591-92 (8th Cir. 2020); *United States v. Howard*, 947 F.3d 936, 946 (6th Cir. 2020); *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019); *United States v. Stevens*, 881 F.3d at 1253.

Therefore, unlike the indictment in *Martinez I and II*, and as required by *Elonis*, the Indictment here is legally sufficient, because it alleges the *mens rea* required by Title 18, United States Code, Section 875(c). See *Elonis*, 575 U.S. 723.  Moreover, the Indictment properly tracks

the language of the statute and briefly describes the alleged facts of the offense, as it includes the threatened groups of individuals, agents from the FBI, and the threatened injuries, death by gunfire.

The Defendant's motion requires the court to go beyond the four corners of the Indictment, which is impermissible in a Motion to Dismiss. In effect, the Defendant asks this Court to consider the evidence that the Government will present at trial—including the content of the video that led to these charges—and to make a factual finding that the statements within those videos do not constitute "true threats." Because the existence of a "true threat" is a factual question, its proof or refutation requires a trial. Indeed, the 11th Circuit's pattern jury instructions confirm that the existence of a true threat is one of the elements of the offense, which a jury would have to find to convict the Defendant. *See* 11th Cir. Pattern Jury Instruction O30.3 (requiring that the message "contain[] a true threat" and defining that term to mean "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear").

Whether the Government can or cannot prove that the Defendant's alleged communications were aimed at a sufficiently specific or discrete group of individuals and threatened an injury to the person of another is properly addressed in a Rule 29 motion, or decided by a jury, not a motion to dismiss. Indeed, the Defendant's motion portrays how unworkable her proposed rule would be. She claims in her motion that her statements, including her threat to kill the FBI if they come to her home, is protected political speech and political hyperbole.  She also alleges that the statement was not a threat at all.  However, these arguments are fact specific, requiring the fact finder to consider the context in which it was made to determine the seriousness of the threat.  For example, the number of threats, the tone of the threat, the other statements made at or around the time of the threat, and the other actions taken by the Defendant while making his statement are all relevant

factual considerations. A factual dispute that requires consideration of the totality of the surrounding circumstances cannot be the basis for granting a motion to dismiss an indictment. As discussed below, when evaluated in their full context, the statements charged in this Indictment are true threats—not protected speech.

### b. <u>Alternatively, the Defendant's Motion to Dismiss Fails on the Merits.</u>

Defendant claims that the Indictment should be dismissed because her threat to kill the FBI is political speech (*See* Def. Mot. at DE 26:1). At worst, she claims it is political hyperbole that cannot be prosecuted as a matter of constitutional jurisprudence (*Id.*). Finally, she claims that her threat was not a true threat. In making these claims, the defendant conflates her constitutionally protected online communications about political matters with her unlawful threat to shoot FBI agents. Clearly, her speech about her love of former President Donald Trump, her criticism of current President Biden's approach to China, and her work as a poll worker in Florida is constitutionally protected speech. However, her threat to kill FBI agents is not. Real threats like hers do not contribute to the marketplace of ideas that house constitutionally protected speech. A criminal threat cannot be shielded from prosecution simply because it was made while engaged in otherwise lawful discourse. A criminal threat simply is not constitutionally protected speech.

### i. **Defendant's Threat to Shoot the FBI is not Constitutionally Protected Political Speech.**

The First Amendment generally precludes the government from prohibiting speech based on the content of a message. *See Regan v. Time, Inc.*, 468 U.S. 641, 648-49, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is

that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

There are, however, a few exceptions to the First Amendment's general prohibition of Congress penalizing speech based on its content. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."). Of relevance here, the First Amendment does not prevent the government from prohibiting and punishing speech that constitutes a true threat. *See United States v. Alvarez*, 567 U.S. 709, 717, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012). The Supreme Court has understood the First Amendment to comport with society's need to protect itself "from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur," which true threats entail. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992). Therefore, "a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. at 707 (per curiam). Courts must distinguish mere "political hyperbole" from a true threat. *Id.* at 708. A "true threat" is "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

To prove that a defendant made a true threat, the government must prove beyond a reasonable doubt that the defendant:

1.  knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and

2.  sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

(11th Cir. Pattern Jury Instruction O30.3).

A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to injure another person. *Id.* A true threat has been defined as a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. at 360. The government does not have to prove that the Defendant intended to carry out the threat. Eleventh Circuit Pattern Jury Instruction, Offense Instruction #30.3 (2016 Edition).

In determining whether a statement constitutes a threat, courts look to context. *Alaboud*, 347 F.3d 1293, 1296 (11ᵗʰ Cir. 2003) ("A communication is a threat when in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor.") (citations committed); *Jordan*, 591 F. Supp. 2d 686, 706-07 (S.D.N.Y. 2008). The number of calls, the caller's tone, and the victim's reaction are factors that a jury could consider. *Alaboud*, 347 F.3d at 1297.

A "direct statement of personal intent is not necessary for" a court "to find that a communication conveys a threat of injury ...." *United States v. Dillard*, 795 F.3d 1191, 1200 (10ᵗʰ Cir. 2015). In assessing whether a reasonable person would consider a message to be a threat, courts must take into consideration connotations that add an additional layer of meaning to a message. *United States v. Turner*, 720 F.3d 411, 422 (2d Cir. 2013); *United States v. Shoulberg*, 895 F.2d 882, 886 (2d Cir. 1990) (upholding a threat conviction against a First Amendment challenge due to an implied use of violence and overtones of an imminent threat).

Courts also consider the reaction of the recipient when assessing whether a communication entails a true threat. *See Watts*, 394 U.S. at 708 (noting that the Court considered the "reaction of the listeners" in its analysis). When the government is a recipient of the alleged threat, although

not dispositive, a court may consider the rapidity with which the government responds to a threat. *United States v. Hoffman*, 806 F.2d 703, 712 (7th Cir. 1986) (noting that the immediate response of the government was "clear evidence" of the government's perception of the seriousness of the defendant's expressed intent to carry out his threat).

Thus, in *United States v. Baker*, 2021 WL 318311 (N.D.Fl., January 25, 2021), the District Court in the Northern District of Florida recently stated that the comingling of threats with political speech does not shield a defendant from culpability under the statute criminalizing interstate communications of a threat. *Id.* at 6.  Under the First Amendment, amalgamating true threats with political commentary does not immunize the former. *Id.*

In *Baker*, the defendant made numerous online statements relative to a political event he created on Facebook on January 12, 2021, entitled "Defend Tallahassee."  In the details section of the post, the defendant allegedly wrote that "we will circle the state Capitol and let them fight the cops and take the building.  Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber …" *Id.* at 2.

On January 14, 2021, in a comment to an article posted on the internet, the defendant posted a "CALL TO ARMS JANUARY 20TH!"  At the top of the posting was an image of what appeared to be an AK-47 assault rifle.  The rest of the defendant's message stated:

> Armed racists have planted the confederate flag in America's Capitol as they openly declared that they WILL CONTINUE to wage an ARMED COUP at every American Capitol, including Tallahassee, on Inauguration Day.
>
> We need ALL FLORIDA RESIDENTS to RISE UP! Here in Florida we must encircle terrorists who attack the Capitol! Let them take the capitol and fight with cops, SURROUND THEM AND TRAP THEM INSIDE!
>
> Tally residents have answered the call to arms, including combat veterans. Join us! Help protect your community from terrorists. We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE.

This is an armed COUP and can only be stopped by an armed community!

*Id.* at 3.

Although the threats were made in the context of political discourse, the District Court recognized that a reasonable person would understand that the defendant's communications were true threats. The defendant spoke about the use of force to commit acts of violence, kidnapping, and attempted kidnapping ("[W]e will encircle them and trap them inside"). He spoke about the use of a firearm ("We will drive them out of Tallahassee with every caliber available"). He also threatened the use of an angry mob intent on "driving" "the enemy" from an area. The court held that a reasonable person could understand these statements, and many others like them used by the defendant in the context of his political rhetoric, to be serious expressions of an intent to commit acts of unlawful violence. *Id.* at 4-6.

The *Butler* Court also recognized that the FBI perceived the defendant's messages to constitute a real threat of violence. The FBI sought a warrant to arrest the Defendant the same day that he transmitted his January 14th communication and a mere two days after his January 12th communication. Although the government's understanding of a message cannot be a court's sole basis for concluding that a message constitutes a threat—that would be an abdication of the court's duty to determine probable cause independent of the executive branch—it is one relevant factor in the probable cause analysis. *Id.* at 5.

The Court also rejected Baker's claim that his statements constituted hyperbolic speech protected by the First Amendment. "To the extent that the Defendant argues that the political nature of his speech insulates his threats from prosecution, even when a threat accompanies pure political speech, this comingling of threats with political speech 'does not shield a defendant from culpability.'" *Id.* at 6, citing *United States v. Viefhaus*, 168 F.3d 392, 396 (10th Cir. 1999);

*States v. Callahan*, 702 F.2d 964, 966 (11th Cir. 1983). "Although there are political overtones to Defendant's messages, he explicitly included true threats within his diatribe. That is sufficient to bring the Defendant's messages within the zone of threatening that Congress lawfully may prohibit and punish." *Id.*

Finally, the Court rejected the defendant's claim that he did not intend to commit violent acts and he did not have the means to do so.  A statement can be a threat even if he lacked the means to make his threat a reality and even if the speaker did "not actually intend to carry out the threat," so long as he at least knew that others likely would perceive his communication as a threat. *Black*, 538 U.S. at 359-60; *United States v. Dutcher*, 851 F.3d 757, 761 (7th Cir. 2017) ("A true threat does not require that the speaker intend to carry it out, or even that she have the capacity to do so.").

Similar to *Baker*, the District Court in the Northern District of Iowa also held last year that a defendant's tweets threatening a US Senator were "true threats" and not political hyperbole. *United States v. Dierks*, 978 F.3d at 589.  It explained that "political context alone does not excuse a threat." *Id.* (citations omitted).  True threats, statements that a reasonable recipient would have interpreted as serious expression of intent to harm or cause injury to another, are not political speech protected by the First Amendment. *Id.* at 590.

Like *Baker* and *Dierks*, the Defendant in the instant case made a real threat to shoot the FBI if they came to her home to interview her.  This threat was made in the context of her telling her social media audience moments earlier that the FBI had just contacted her and wanted to talk to her.  She clearly stated in the video message that she did not want to talk to them.  She accused the United States Government in the same 50 second video of persecuting a four-star general, presumably a reference to former President Trump's national security advisor Michael Flynn, and

being ready to exercise her Second Amendment rights.  She was clearly agitated and used an aggressive tone.  Under these circumstances, a reasonable person would likely perceive her commitment to shoot the FBI if they come to her home again as a real threat.

Certainly, the FBI perceived the video as a threat.  One week before the FBI first viewed the video, two FBI agents in Broward County, Florida were shot and killed in Sunrise when responding to a residence to execute a search warrant.[1]  With the memory of those slain agents still fresh in the Bureau's mind, the agents in the instant case acted swiftly to dispel the threat. They withdrew their plan to return to her residence.  Instead, they obtained a criminal complaint and arrest warrant six days after first seeing the video.  The fact that the defendant may not have owned firearms or intended to shoot the agents is of no moment.  Her threat was clear, direct, and specific.  It identified her intended victim and the time and place that she would carry out her threat.  Threatening communications of this kind are not constitutionally protected speech, no matter how much the defendant tries to comingle it with her protected speech. *See also United States v. Castillo*, 564 F. App'x 500 (11th Cir. 2014) (defendant convicted of making a Section 875(c) threat after the court rejected his claim of political hyperbole relative to his Facebook post that he was "going to hunt down and kill [the President] and watch the life disappear from his eyes" if he gets re-elected.  The factors the court used to determine that it was a true threat included the graphic promises of violence made, the tone of voice when threats were conveyed, and the number of threats); *United States v. Callahan*, 702 F.2d 964 (11th Cir 1983) (court rejected defendant's claim that his mailing of a letter to the Secret Service that proclaimed that "[i]t is essential that [the President-elect] and [Vice President Elect] are assassinated on Inauguration Day in front of the television cameras" was political hyperbole).

---

[1] Defendant mistakenly stated in her motion that the shooting of the agents in Sunrise took place on February 5, 2021 (See Def. Mot., at DE 26:5, fn 12).

In her motion, the Defendant commits the same fatal flaw as those made by the defendants in *Baker* and *Dierks* – she uses her otherwise lawful speech as a shield to her criminal threats. For example, on page 9 of her motion, she alleges that "the content of [her] post plainly relates to matters of public interest." While it is true that her disdain for the FBI, opposition to the prosecution of Michael Flynn, and her support for the second amendment are matter of public interest, her desire to kill FBI agents if they come to her home is not.

The law does not allow a participant in political discourse to make true threats with impunity. Her threat was not hypothetical or hyperbolic. It was precise as to time and place. After informing her audience that the FBI just contacted her to talk about the events of January 6, she stated in an angry tone with language laced with profanity that she would shoot the FBI if they came to her house to talk to her. Any reasonable person would perceive that statement as a real threat. Such threats do not enjoy constitutional protections.

ii. **Defendant's Threat, While Conditional, is a Real Threat Punishable by 18 U.S.C. 875(c).**

Defendant also claims that her alleged threat was conditional, like the threat to shoot the President in *Watts*, supra. There is no rule that conditional statements, statements "convey[ing] a vague timeline or condition," or even wishes can never be a true threat. *United States v. C.S.*, 968 F.3d 237, 245 (3d Cir. 2020), citing *United States v. Stock*, 728 F.3d 287, 301 (3d Cir. 2013); *see also Kosma*, 951 F.2d 549, 554 n.8 (3rd Cir. 1991) (stating even if the Court found the statements were "truly conditional," they would still be true threats). Rather, the focus is on whether the statements reflect, to a reasonable person, "a serious expression of an intent to inflict bodily injury on an individual." *See Elonis*, supra.

17

Admittedly, the Supreme Court has cautioned that "the expressly conditional nature" of a statement must be considered in assessing whether it is a true threat, primarily when the expressed contingency likely would never occur. *Watts*, 394 U.S. at 708. "[A] statement may constitute a true threat even if it is conditional." *Dillard*, 795 F.3d at 1200. "Indeed, when a threat is used to intimidate or dissuade an individual from taking a particular action, the threat will often be contingent, with the threatener suggesting that violence will only be used if the listener fails to comply with the threatener's demands." *Id.* "Most threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats. They are threats nonetheless." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (citation omitted).

Here, while Defendant's threat was conditioned on the FBI showing up at her house, a reasonable person would likely understand her threat to be a means of intimidating the FBI.  As stated above, she criticized the FBI and threated in her profanity laced video to shoot them if they came to her house.  This threat was specific, clear, and direct.  Under the circumstances, a reasonable person would likely perceive her threat as real and true.

### iii.  **Defendant's Threat Was Not Vague.**

Next, Defendant claims that her threat was vague because it did not identify a specific target and was not directed at their subject. *See* Def. Mot. at 19-21.  While her threat did not mention her intended victim by name, or specify a precise time and date of action, it was sufficiently specific for a reasonable person to believe that she intended to carry it out. Thus, her claim of vagueness is unpersuasive.

A "threat of violence does not need to be imminent" to constitute a true threat. *Dillard*, 795 F.3d at 1200.  Moreover, a threat toward a group of individuals can certainly be punishable under

Section 875(c).  In *United States v. Kahn,* 937 F.3d 1042,[2] the defendant posted threatening messages on Facebook directed at different groups of individuals, including college students, vulnerable individuals, people walking their dogs, high net worth individuals, and witnesses that get in the way. *Id*. at 1046. His posts also stated that his "free kill zone" would be the "loop area of Chicago to the Northern Lincoln Park area." *Id*.

The Seventh Circuit upheld the district court's order denying Kahn's motion to dismiss and his conviction. *Id*. at 1050. Kahn argued that the indictment was "impermissibly 'vague and nonspecific,'" because it failed to include "who he threatened, as well as where, when, why, and how threatened violence would occur." *Id*.  The court disagreed: "Kahn asks too much of the indictment. We review indictments 'on a practical basis and in their entirety,' not in a 'hypertechnical manner…' Although the indictment must prove some means of pinning down the specific conduct at issue[,]… the presence or absence of any particular fact need to be dispositive." *Id*. (citations omitted). Kahn also argued that the government failed to prove the targets of his threatening communications at trial. The court disagreed, holding the evidence presented at trial was sufficient to prove beyond a reasonable doubt that the named groups of individuals were the targets of Kahn's threatening communications, thereby upholding the jury's guilty verdict. *Id*. at 1055.

Courts in other circuit have held that similar threatening communications are proper. In *United States v. Stoner*, 781 Fed. Appx. 81 (3rd Cir. 2019), a threat against Texas police officers was particularized enough to uphold a conviction under Section 875(c). Furthermore, in *United States v. Wheeler*, 776 F.3d 736, the court reversed the defendant's conviction because of an erroneous jury instruction, but held that there was sufficient evidence to warrant a retrial where

---

[2] The Government has not located any controlled Eleventh Circuit case law on this issue.

the defendant made public Facebook posts exhorting violence against police officers, children, and non-specific individuals.

The Sixth Circuit has held that the government is not required to specify the target of the threat, so long as the target can be inferred from the context of the communication. *United States v. Cox*, 957 F.2d 264, 265 (6th Cir. 1992). In *Cox*, the defendant's car was repossessed by a bank, along with certain personal items that had been inside the car. *Id*. The defendant called the bank to speak with the bank employee that he previously discussed a delinquent car loan. *Id*. When that employee did not come to the phone the defendant made the following threat, "I tell you what, you all better have my personal items to me by five o'clock today or its going to be a lot of hurt people there." *Id*. at 265. The defendant's threat neither named an individual or group of individuals nor did it specify a threatened injury.

Due to the general nature of the communication, Cox argued that he could not be convicted for making a true threat. However, the Sixth Circuit did not overturn the defendant's conviction because there was no named individual or group of individuals, or specific injury. Rather, the court stated, "Cox would avoid responsibility under the statute by claiming that the alleged threat did not identify any specific person or group." *Id.* However, "[t]he defendant's threat reasonably could be interpreted in context to mean that he was planning to go to the bank and 'hurt people.'" *Id*. As support for this proposition, the Sixth Circuit also pointed out that courts have interpreted companion statutes, such as Title 18, United States Code, Section 876, Mailing Threatening Communications, as not requiring a specific individual target.

The Indictment in the instant case alleges the group of individuals the Defendant is threatening in her communications on social media — FBI agents. *Kahn* and *Cox* do not hold that a particular place or time frame is required when a group of individuals is argued to be too general.

Certainly, in *Kahn*, the potential for an attack sometime in a 30-day period in an area measuring 1,579 square miles,[3] the Chicago Loop area, is no more specific than the communications at issue in this case. *Kahn*, 937 F.3d at 1048; *see also United States v. Stoner*, 781 Fed. Appx. 81 (a threat against Texas police officers was particularized enough to uphold a conviction under Section 875(c)); *United States v. Wheeler*, 776 F.3d 736 (the court reversed the defendant's conviction because of an erroneous jury instruction, but held that there was sufficient evidence to warrant a retrial where the defendant made public Facebook posts exhorting violence against police officers, children, and non-specific individuals).

      iv.  **Defendant's Self Serving Explanation Are a Factual Issue Best Left for a Jury's Consideration or on a Rule 29 Motion.**

Finally, Defendant asks Your Honor to invade the province of the jury by offering a litany of self-serving explanations as a basis to dismiss the Indictment. She states that the threatening communications alleged in the Indictment "was not 'serious,' but at most 'mere political hyperbole'" (*See* Def. Mot. at DE 26:16). She claims that it was "intended for her unique audience and no one else," as if social media posts are ever private. *Id.* at 20. She asserts that her statement was "political theater never meant to be taken literally." *Id.* at 21. These factual claims go directly to the elements of the crime charged: (1) knowingly sending a message in interstate commerce containing a true threat to injure the person of another; and (2) with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat. As discussed in more detail above, a jury is the appropriate finder of fact to decide these factual disputes. Alternatively, the Court may dismiss the Indictment on a Rule 29 motion after the Government has presented its evidence to the jury. Certainly, factual disputes are not meant to be resolved in a motion to dismiss. Accordingly, the Defendant's motion to dismiss fails on the merits and should be denied.

---

[3] https://www.google.com/search?q=square%20footage%20of%20chicago%20loop%20area&cad=h.

III.     **Conclusion**

For the reasons set forth above, this Court should deny the Defendant's Motion.


                              Respectfully Submitted,

                              JUAN ANTONIO GONZALEZ
                              ACTING UNITED STATES ATTORNEY

                    BY:     */s/ Mark Dispoto*_____
                              Mark Dispoto
                              Assistant United States Attorney
                              Court Id. No A5501143
                              500 South Australian Avenue
                              West Palm Beach, Florida 33401
                              Tel: (561) 209-1032
                              Mark.dispoto@usdoj.gov

                    **CERTIFICATE OF SERVICE**

   **I HEREBY CERTIFY** that on July 12, 2021, I electronically filed the foregoing with the
Clerk of the Court using CM/ECF.


                              */s/ Mark Dispoto*_____
                              Assistant United States Attorney