UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80039-CR-ROSENBERG

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

SUZANNE ELLEN KAYE,
        Defendant.
_____:

## DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE [DE 54] TO EXCLUDE DEFENDANT'S EXHIBITS

The government asks the Court to exclude evidence that supports Ms. Kaye's theory of defense: that she engaged in protected, political speech. The ten defense social media videos provide context for the jury to evaluate whether Ms. Kaye engaged in a "true threat" or whether she engaged in protected political expression. The Court should deny the government's motion and permit Ms. Kaye a robust and complete defense to this charge, which seeks to curtail her First Amendment rights.

The Supreme Court has held that the United States Constitution guarantees defendants like Ms. Kaye the right to a complete defense. *See Holmes v. South Carolina*, 547 U.S. 319, 319 (2006). In so holding, the Court stated, "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants '*a meaningful opportunity to present a complete defense.*'" *Id.* at 319 (emphasis added) quoting *Crane v. Kentucky,* 476 U.S.

683, 690 (1986). The Eleventh Circuit has found four categories of defense evidence that should not be excluded: 1) evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense; 2) evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain; 3) evidence not itself tied to any of the elements of a crime or an affirmative defense but that which may have a substantial impact on the credibility of an important government witness; and 4) evidence that while not directly or indirectly relevant to any of the elements of the charged events nevertheless tends to place the story presented by the prosecution in a significantly different light such that a reasonable jury might receive it different. *United States v. Hurn,* 368 F.3d 1359, 1363-64 (11th Cir. 2004), *see also United States. v. Russell*, 957 F.3d 1249 (11th Cir. 2020) (holding it was plain error to exclude defendant's evidence related to his state of mind and knowledge of his alien status); *United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989) (reversing a conviction where the Court excluded evidence of the defendant's state of mind, the basis of the defense); *United States v. Ethridge*, 948 F.2d 1215 (11th Cir. 1992) (reversing a conviction where evidence that tended to negate the defendants intent to commit a crime was excluded). As to the fourth category of defense evidence that should be admitted, the Court noted that in some cases:

> the government's selective presentation of entirely truthful evidence can cast a defendant in an inaccurate, unfavorable light, or make entirely legitimate, normal, or

2

> accepted acts appear unusual or suspicious. In these situations, the defendant has the right to introduce additional evidence to dispel this unjustified taint, even if that evidence does not directly or indirectly bear on a particular element of an offense.

*Id.* at 1366-67. Ms. Kaye's videos are admissible under categories one, two, and/or four because the videos provide context (collateral evidence) for the jury to examine her intent (an element of the crime) and whether she engaged in a true threat (also an element of the crime). In addition, the videos are admissible because they fairly portray Ms. Kaye's identity on social media, and her portrayal would otherwise be skewed by the government's limited selection of evidence.

The government concedes that context is a relevant factor for the jury to consider whether the speech in question is a "true threat." D.E. 54 at 9, 15. They must because the Supreme Court has mandated its consideration. When ruling in favor of the inflammatory funeral protests made by the Westboro Baptist Church in *Snyder v. Phelps,* the Supreme Court held that the "context" of the speech made it a matter of public concern – notwithstanding the personal harm it caused the soldier's loved ones – because the church had long been speaking on the issues it protested over, and because the protests occurred in a "public place." 562 U.S. 443, 455-56 (2011). Similarly in *Watts v. United States*, the Supreme Court reviewed the context of an activist's threat to kill President Johnson and found:

> We agree with petitioner that his only offense here was a kind of very crude offensive method of stating a political opposition to the President. *Taken in context*, and regarding the expressly conditional nature of the

3

> statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.

*Watts v. United States*, 394 U.S. 705, 708 (1969) (emphasis added) (internal quotations omitted). Context is paramount when evaluating threat cases, particularly on social media. *See* P. Brooks Fuller, *Evaluating Intent in True Threats Cases: The Importance of Context in Analyzing Threatening Internet Messages*, 37 Hastings Comm. & Ent L.J. 37 (2015) and P. Brooks Fuller, *The Angry Pamphleteer: True Threats, Political Speech, and Applying Watts v. United States in the Age of Twitter*, 21 Comm. L. & Pol'y 87 (2016).

In this case, context includes Ms. Kaye's social media identity, how she engages with her followers, how she curates her public posts, and the content of her social media speech. *See also* Notice of Expert Testimony and Summary at D.E. 58. Indeed, as noted by the government, it was the content of previous "anti-Biden" and "anti-Democratic" political speech, which caused a tipster to alert the FBI. See D.E. 31 at 1 and D.E. 54 at 1. These videos, the government previously conceded, are protected political speech. *See* D.E. 31 at 10. ("Clearly, her speech about her love of former President Donald Trump, her criticism of current President Biden's approach to China, and her work as a poll worker in Florida is constitutionally protected speech.")

Ms. Kaye's use of social media to engage in humor and political discourse is directly related to the speech in the indictment. The fact that this video appears in a stream of other political posts is also relevant as to whether this video is protected political speech, like in *Watts*, or a true threat. The videos are also relevant to what

4

a reasonable person or her audience of social media followers could conclude about the seriousness of her language. The defense videos help establish the media context, temporal context, and implied meanings of the video in question.

In true threats cases, courts have taken into account the identity of the speaker when determining whether a reasonable person could construe a statement as a threat, and the defense videos are part of Ms. Kaye's online identity. For example, in Justice O'Connor's opinion in *Virginia v. Black*, she wrote at some length about the importance of viewing the burning cross through the lens of the Ku Klux Klan's identity as a political group. *Virginia v. Black*, 538 U.S. 343, 356, (2003). The burning cross, vile as it is, may be method of speaking a political viewpoint. *Id.* at 365-66. *Virginia v. Black* made clear that the identity of the speaker is relevant to interpreting whether a statement, such as cross burning, is a true threat or protected political expression. In modern times, this is why comedians who say violent things through their public persona are rarely, if ever prosecuted. The context of their public persona is relevant to the true threat analysis, as is Ms. Kaye's public social media identity.

It is worth noting that the government has sought now, in multiple pleadings, to introduce extrinsic evidence, arguably context, related to the FBI's state of mind when they finally viewed Ms. Kaye's video, days after it was posted. *See* D.E. 31 at 16 ("One week before the FBI first viewed the video, two FBI agents in Broward County, Florida were shot and killed in Sunrise when responding to a residence to execute a search warrant. With the memory of those slain agents still fresh in the

5

Bureau's mind, the agents in the instant case acted swiftly to dispel the threat.") and D.E. 54 at 13. The government seeks to introduce this evidence, which aims to enhance the seriousness of the threat, even though the incident occurred after Ms. Kaye' posted her video in question and she had zero involvement in the incident. In other words, the government seeks to ascribe criminal liability to Ms. Kaye because of the actions of an unrelated third-party. Their theory for admission, presumably, is that this unrelated incident impacted how the FBI viewed Ms. Kaye's threat. In other words, the government wants the Court to consider context for their evidence but not Ms. Kaye's protected political expression.[1]

The ten defense videos are less than ten minutes in total. All ten videos take place within about two months of Ms. Kaye's arrest for this case. Indeed, the last two videos are the last videos she posted prior to her arrest. The government's argument that these videos are not relevant is absurd. It is relevant that Ms. Kaye did reiterate her "threat" with a second or series of videos. It is relevant that she did not post any videos of her purchasing or shooting firearms. It is relevant that she uses her social media to share her political viewpoints. It is relevant that she acts theatrically and engages in parody. It is relevant, linguistically, how and when Ms. Kaye curses and

---

1 These arguments by the government to transfer criminal culpability to Ms. Kaye for the loss of FBI agents *after* she posted her video makes a requirement of a subjective intent to convey a threat even more critical in this case. Yet, at a minimum, this Circuit requires "the Defendant knowingly sent a message…containing a true threat" "with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat." *See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases) O30.3 (2020)

6

uses the word "f*ck" on social media. It is all relevant, including her Facebook page identification of "ANGRY Patriot Hippie," for the jury to determine whether Ms. Kaye engaged in protected political expression.

Of note is the type of similar evidence the government sought to introduce in the online threats trial of *United States v. Baker*, Case No. 4:21cr10-AW (N.D. Fla. April 7, 2021), ECF No. 35. Baker posted multiple threats on social media. *Id.* In the government's motion to introduce inextricably intertwined and/or Rule 404(b) Evidence, the government stated to the Court, "[Baker's] purchase of an AK-47 style rifle and ammunition—similar to the one he is seen firing in videos, and the same style of rifle he included on the top center of the "Call to Arms January 20th!" flyer—is particularly probative of the Defendant's intent because it is illustrative of his thought process and desire to act on his threats." *Id.* at 21. Similarly, the government argued that Baker's military training, including combat and weaponry training, was relevant to show his communications were true threats coupled with the fact that he boasted about "his desire to return to the United States from the Middle East to lure Turkish pilots training on United States military bases off the installation to kill and mutilate them." *Id.* at 18-20. The government also argued that Baker's a long history of similarly violent speech combined with his contemporaneous firearm acquisition, prior firearm possession and training/use, and his dishonorable military history was relevant to show *"context, motive, and set-up* of the violent encounter [he] was preparing for" along with the "means to act on his assertions" and to determine his intent. *Id.* at 22, 23. Similarly, this Court should permit the jury to consider the

7

political context of Ms. Kaye's posts in order to evaluate her motive and intent. Unlike the government, Ms. Kaye does not need to admit these videos through an inexplicably intertwined or 404(b) analysis, as the Constitution protects her right to present a complete defense. Her videos are relevant to the crime charged, and her videos fall within the categories of permissible defense evidence.

United States citizens have the right to criticize their government. This is the "central meaning of the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964). The Court has denied Ms. Kaye's motion to dismiss, and as such, it is now for the jury to determine if her speech is politically protected.[2] In order to make this determination, the jury must weigh the context of her speech. Accordingly, Ms. Kaye respectfully moves this Court to issue an order denying the government's motion.

Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

s/ Kristy Militello
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
450 South Australian Avenue, Suite 500
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

---

[2] As the Court noted, Ms. Kaye may renew her dismissal arguments at trial in the form of a Rule 29 motion for judgment of acquittal, and she plans to do so.

CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

           *s/ Kristy Militello*
           Kristy Militello