UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-80039-cr-RLR

UNITED STATES OF AMERICA

vs.

SUZANNE ELLEN KAYE,
    a/k/a "muckbangXX,"
    a/k/a "suzannekaye3,"
    a/k/a "Angry Hippie Patriot,"

        Defendant.
_____/

### UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF P. BROOKS FULLER

      The United States of America, by and through undersigned Assistant United States Attorney, files this reply to the defendant's response (DE 65) to the United States' motion to exclude from trial the testimony of P. Brooks Fuller, J.D., Ph.D (DE 62). In her response, the defendant contradicts her own Notice of Expert Testimony and Summary (DE 58, hereinafter "Notice"). Specifically, she now claims that Dr. Fuller will not opine as to whether Ms. Kaye is factually innocent (DE 65, at Footnote 1). However, in her Notice, she stated that "Dr. Fuller **will testify** that the video that serves as the basis for the indictment likely does not articulate a true threat in violation of 18 U.S.C. § 875(c)" (DE 58:2, emphasis added). Although defendant explains that Dr. Fuller's opinion in the Notice was disclosed "for discovery purposes only," no such disclaimer was ever included in the Notice. While the government is loathed to speculate, one would certainly understand if the defendant has changed her to approach to her expert witness after having reviewed the government's motion which clearly demonstrates the impropriety of the

1

witness' opinion testimony.

The defendant now asserts that Dr. Brooks will "render an expert opinion about the ways that people participate in political discussions on social media, particularly involving complex and divisive social issues, and the way social media audiences perceive heated communications uttered by people whom they do not know well" (DE 65:5). Based on his research, he seeks to opine further that the defendant's statement that she will "exercise my Second Amendment right to shoot your fucking ass if you [the FBI] come here" (*See* Indictment, at DE 17) "**may not** rise to the level of a true threat" (*Id.* at 8, emphasis added). This opinion still fails to meet the requirements of Fed. R. Evid. 702 and, thus, must be excluded from trial.

## Argument

A. Dr. Brooks' Testimony is Irrelevant, Confusing, and Inadmissible

The defendant states that Dr. Fuller will testify about "the history of political discourse in this country and how social media has changed that discourse" (*Id.* at 1). She claims that the witness will "educate jurors about how people use social media to participate in political discourse, particularly when it relates to complex and divisive social issues" (*Id.* at 2). She asserts incorrectly that "understanding how individuals engage in political discourse through [social media] and how audience members tend to receive that discourse is vital to the jury's evaluation" of the defendant's alleged threatening statement (*Id.* at 6).

Dr. Fuller's opinions about how **some people** engage in political discourse and how **some audience members** receive that discourse do not relate to any particular issue in the case. Moreover, these opinions are not tied to the facts of the case to aid the jury in resolving any factual dispute. Evidence that some people use inflammatory, violent imagery as a method of

2

emphasizing a political point of view and not as a real threat sheds no light on whether the defendant did so in this case. Dr. Brooks has no personal knowledge about the facts of this case and does not know what was in the defendant's mind when she posted her video on social media. Asking the jury to consider what other individuals at other times may have intended when posting similar statements online, or how other audiences may have perceived those other statements, are irrelevant and speculative.

Additionally, far from assisting the jury to understand any issue in the case, Dr. Fuller's testimony will confuse and mislead them. By offering historical information, Dr. Fuller proposes sweeping opinions about how people generally think and behave while engaging in social media discourse. Without any personal knowledge of the defendant's state of mind, his testimony is not helpful to the jury. It will mislead them into thinking that because some people use violent language to convey a non-threatening message on some occasions, then the defendant must have done so too. *See* Fed. R. Evid. 702 (proponent of expert testimony must show that "the witness has applied the principles and methods reliably to the fact of the case").

Although the defendant claims that Dr. Brooks will not be asked to opine regarding her intent, she asserts that he will at least question whether her statements constitute a true threat under the law. But she acknowledges that Dr. Brooks' can only speculate about her intent. Specifically, she states the following:

> Here, it matters that Ms. Kaye made her statement on social media to her followers and **it matters what they likely thought of her statement**. Her entire online persona, her prior posts, and even the background imagery and music she used in her videos all matter. Dr. Fuller's testimony will explain the impact of the venue, or the platform, from which Ms. Kaye made her statement. He can explain how social media has become the modern day town square and describe the nuances of that platform that suggest someone like Ms. Kaye can say she will exercise her Second Amendment rights to shoot someone and that speech, taken in context, **may**

3

**not** rise to the level of a true threat.

(*Id.* at 8, emphasis added).

This testimony is impermissible for several reasons. First, it is legally inaccurate to say that it matters what her social media followers thought of her state of mind. The law requires the government to prove merely that she intended her statement to be a true threat (or knew others would perceive it that way), and that a reasonable person would have regarded it as such. *United States v. Elonis*, 575 U.S. 723 (2015). Her social media audience is not the reasonable person standard. What her social media audience thought about her intent is not relevant to the jury's deliberations.

Second, we know what the defendant's social media audience thought of her statement. They reacted with widespread condemnation. According to records maintained by Facebook, D.A. wrote, "Be sure to let us know how this video works out for you. I think the FBI called it 'evidence.' LMAO!!" K.D. wrote, "You're a bright one loser, enjoy prison." A.E. wrote, "… just keep digging that hole, moron! I'm sure the FBI loves people who make their own case." P.T.D. wrote, "Pretty sure they will be very happy to arrest you. And add more stupid federal charges. And use your little, 'Drunk Karen playing stupid patriot games and winning stupid patriot prizes' as evidence." G.S. wrote, "Always a good idea to chug Jack Daniels, threaten to shoot the police, and post it while explaining your understanding of the legal system." G.F. wrote simply, "She seems nice."

The defendant's audience on Instagram was equally outraged. E.C. wrote, "If you were such an American, you wouldn't be trying to stop the counting of other American votes. Put the Jack and Qanon insanity down and get a life !" M.C. wrote, "Sounds like she has a warped view

4

of the 1st and 2nd Amendments.   Maybe she will learn about it in court and from her court-appointed lawyer!!" J.B. wrote, "You pathetic fraud … lock her up".   D wrote, "what a loser you are."   In reviewing a total of 345 pages of records from Facebook and Instagram, undersigned counsel for the United States did not find a single comment of support for the content of the defendant's threatening video.

Knowing what her audience thought of her statements, Dr. Fuller's testimony about what he thinks his audience likely thought of her statement is completely useless testimony.   He either will repeat what we already know or render an opinion that we know is speculation and unsupported by the evidence.   Either way, the opinion testimony will not assist the jury in any useful way.

Third, Dr. Brooks' opinion that the defendant's statement **may not** rise to the level of a true threat is also completely unhelpful.   The logical converse of the statement is also true: the defendant's statement **may** rise to the level of a true threat.   Thus, the witness has no idea whether her statement does or does not rise to the level of a true threat.   Simply opining that it might not rise to the level of a true threat does not assist the jury in any way resolve this factual dispute. His opinion invites the jury to draw an adverse inference based on his research which clearly is precluded by Fed. R. Evid. 704(b). *United States v. Manley*, 893 F.2d 1221, 1224 (11th Cir. 1990); *United States v. Alexander*, 805 F.2d 1458, 1461 (11th Cir. 1996); *see also United States v. Bennett*, 161 F.3d 171, 182-183, n.14 (11th Cir. 1998) (Rule 704 prohibits "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*.")(citation omitted).

Third, Dr. Brooks is not offering the jury any information that they need to understand the

issues in the case. The jury knows how the internet works. The jury is familiar with social media, including Facebook and Instagram. The jury knows that people go on the internet all the time and say many different things. The jury does not need to be educated about how some people exercise their modern-day speech and how some audiences receive that speech. Thus, Dr. Brooks' testimony does not help the jury in any way.

The issues in this case are relatively straightforward. The jury is capable of judging and interpreting the meaning of the defendant's statements and her conduct without having an "expert" provide a history lesson about online speech. To allow Dr. Brooks to suggest, even without being asked to render a straightforward opinion, that the defendant's statements were not true threats because other people have used violent rhetoric as a tool of persuasion, would not assist the jury in any way. Instead, it would mislead and confuse them.

    **B.**  **Dr. Fuller's Proposed Testimony is Not Reliable and Not Helpful to the Jury**

The defendant claims that Dr. Fuller is qualified to testify about the history of political discourse and social media's impact on it. While this may be true, he is not qualified to render any opinion, explicit or otherwise, on what the defendant intended at the time she threatened to shoot the FBI. Although she denies that Dr. Brooks will give such opinion testimony, her response to the government's motion contains clear examples of such opinion testimony.

As explained above, Dr. Fuller wants to opine that the defendant's statement "**may not** rise to the level of a true threat" (*Id.* at 8, emphasis added). This opinion is wholly unreliable. Dr. Fuller is not an expert in determining the true intent of people who make statements on social media. The defendant has not presented any evidence regarding studies conducted by Dr. Fuller about the true intent of people who make apparently threatening statements.

6

Moreover, the jury in this case will not be asked to determine whether people who use social media to participate in political discourse, particularly when it relates to complex and divisive social issues, mean what they say. Rather, it will be asked to decide whether the defendant intended to convey a true threat. Dr. Brooks' knowledge, training, and experience in mass media does not present any reliable information to assist the jury. Providing a history lesson about political discourse and social media does nothing to assist the jury in determining the defendant's intent.

    **C.    Defendant Has Presented this Court with No Cases in Which Expert Testimony of This Kind Was Permitted in a Threats Case.**

Not surprisingly, the defendant has not presented a single criminal case in this circuit or elsewhere where the court has permitted the expert testimony she seeks. In fact, Dr. Fuller's curriculum vitae does not list a single occasion where he has testified in a court of law as an expert witness on any matter, including matters dealing with threatening communications and Section 875(c) charges.

To the contrary, cases throughout the country have involved allegations of online 875(c) threats without any such expert testimony. For example, in *United States v. Baker*, 2021 WL 318311 (N.D.Fl., January 25, 2021), defendant made numerous online statements relative to a political event he created on Facebook on January 12, 2021, entitled "Defend Tallahassee." In the details section of the post, the defendant allegedly wrote that "we will circle the state Capitol and let them fight the cops and take the building. Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber …" *Id.* at 2.

On January 14, 2021, in a comment to an article posted on the internet, the defendant posted a "CALL TO ARMS JANUARY 20TH!" At the top of the posting was an image of what appeared

7

to be an AK-47 assault rifle. The rest of the defendant's message stated:

> Armed racists have planted the confederate flag in America's Capitol as they openly declared that they WILL CONTINUE to wage an ARMED COUP at every American Capitol, including Tallahassee, on Inauguration Day.
>
> We need ALL FLORIDA RESIDENTS to RISE UP! Here in Florida we must encircle terrorists who attack the Capitol! Let them take the capitol and fight with cops, SURROUND THEM AND TRAP THEM INSIDE!
>
> Tally residents have answered the call to arms, including combat veterans. Join us! Help protect your community from terrorists. We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE.
>
> This is an armed COUP and can only be stopped by an armed community!

*Id.* at 3. Baker did not seek to provide a jury with expert testimony about the history of political discourse in this country and how social media changed that discourse. This information certainly would not have helped the jury determine whether Baker's statement, "We will drive them out of Tallahassee with every caliber available," among others, was a true threat.

Similarly, in *United States v. Carrillo*, 2020 WL 231055, at *1 (D.N.M., January 15, 2020), the defendant posted on Facebook, "You Bitches Want a Physical Civil War … I'm Game … I'll bring My Farm Implements and They will Never find your Bodies … AND for Fun I'll BURN Every ACLU Office in the State … GO TRUMP GO.!"). Certainly, a jury can determine without expert testimony that Carillo's statement was a real threat. *See also United States v. Hussaini*, No 19-60387-CR, 2022 WL 138474 (S.D. Fla. 2022) (no expert witness used where defendant convicted of making threating statements in violation of Section 875(c) for posting videos on YouTube stating that he wanted to "stab Christians" and murder black people by "burning their bodies in a fire"); *United States v. Killingsworth*, 2022 WL 294083 (6th Cir. 2022) (no expert witness used where defendant found guilty of making threatening statements in violation of

Section 875(c) where he posted comments in response to a police shooting of a black man that, "I think a cop needs killed around here again" and other threatening statements against the police); *United States v. Hunt*, 21-cr-00086-PKC, (E.D.NY. 2021) (defendant convicted of threatening to kill a federal official in violation of 18 U.S.C. § 115(a)(1)(B) by posting an 88-second video on a social media platform wherein he commanded his audience to "go back to the U.S. Capitol when all of the Senators and a lot of the Representatives are back there, and this time we have to show up with our guns. And we need to slaughter these motherfuckers."); *Dierks*, 978 F.3d 585 (no expert witness used where defendant convicted of Section 875(c) for posting threatening statements on Twitter against a United States Senator); *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015) (court held that there was sufficient evidence to warrant a re-trial after finding erroneous jury instruction where the defendant made public Facebook posts exhorting violence against police officers, children, and non-specific individuals); *United States v. Castillo*, 564 F. App'x 500 (11th Cir. 2014) (no expert testimony where defendant convicted of making a Section 875(c) threat for posting on Facebook that he was "going to hunt down and kill [the President] and watch the life disappear from his eyes" if he gets re-elected).

Instead of relying on relevant, established case law to support her claims, the defendant cites other contexts in the law to draw equivalencies to the instant matter.  For example, she states that the government may use expert witnesses to prove contemporary community standards in obscenity cases (DE 65:12).  Like experts in those cases, Dr. Brooks claims to be "intimately familiar with how individuals express themselves online and how their audiences perceive that expression" (*Id.*).

This comparison, however, is a false equivalency.  In the obscenity context, the Supreme

9

Court has outlined a three-part test to determine obscene material: (1) whether the average person applying contemporary community standards would find the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive, way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller v. California*, 413 U.S. 15, 24 (1973). Thus, the obscenity test is based on local community standards, not a national one. Expert witnesses are commonly used to establish the local community standard which determines whether material is obscene.

The law of true threats is not based on local community standards. Rather, to prove a true threat, the government must prove that the defendant: (1) knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and (2) sent the message with the intent to communicate a true treat or with knowledge that it would be viewed as a true threat. *Eleventh Circuit Pattern Jury Instructions*, Offense Instruction 30.3 (2016 Edition). A true threat is made under circumstances that would lead a reasonable person to believe that the Defendant intended to injure another person. *Id.* The objective standard is not limited to the local community where the statement was made.

Therefore, expert witnesses are not needed to testify about the history of political discourse and social media's impact on it to determine whether a reasonable person would believe that the defendant intended to injure another person. As stated above, Dr. Brooks' understanding about how other people express themselves online and how their audiences typically perceive those expressions do not provide the jury with any useful information to its use of a reasonable person standard. It is the jury's responsibility alone to determine the defendant's intent. It is highly

improper for an expert witness to testify about other people's intent thereby inviting the jury to speculate about the defendant's intent.

The defendant also draws a false equivalency with drug cases. In the drug context, the government is permitted to utilize experienced narcotics agents to testify about the significance of certain conduct or methods of operation unique to the drug distribution business. *United States v. Butler*, 102 F.3d 1191 (11th Cir. 1997). Similarly, law enforcement officers may testify as to the meaning of slang or code words, *United State v. Holt*, 777 F3d 1234, 1264-1266 (11th Cir. 2015), or smuggling techniques and the modifications that are made to airplanes to facilitate smuggling ventures. *United States v. Chastain*, 198 F.3d 1338 (11th Cir. 1999). This expert testimony is permissible because juries are not typically familiar with the inner workings of a drug distribution scheme. Thus, the testimony provides useful information that helps the jury better understand the facts of the case and resolve factual disputes.

Dr. Fuller's testimony, as described in the defendant's response to the government's motion, will not provide the jury with any useful information. The defendant claims that he will provide "knowledge of how people communicate and receive ideas about high-conflict issues on social media" (DE 65:14). No doubt, the jury is very much aware of how people communicate and receive ideas on social media. They know that people often post videos or written comments on a variety of social media platforms. They are aware that some people use inflammatory rhetoric. They also know that some people go too far and threaten to injure others. The jury will decide whether the defendant's video constitutes a true threat. Dr. Fuller's testimony, as described in the defendant's response brief, is completely useless to them.

The district court serves a critical role as the gatekeeper to the admission of expert

11

testimony. *Daubert v. Merrel Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). The gatekeeping obligation set forth in Daubert applies with equal force to all type of proposed expert testimony. *Kumho Tire Co v. Carmichael*, 526 U.S. 137, 147 (1999). The instant case is precisely the type of case in which the court should exercise its gatekeeping function to exclude Dr. Fuller, whose testimony – far from helping the jury – will mislead and delay through the injection of irrelevant, unreliable, and speculative opinions.

    Respectfully submitted,

    JUAN ANTONIO GONZALEZ
    UNITED STATES ATTORNEY

By: /s/ *Mark Dispoto*
    Mark Dispoto
    Assistant United States Attorney
    Court Id. No A5501143
    U.S. Attorney's Office
    Southern District of Florida
    500 South Australian Ave, 4th Floor
    West Palm Beach, FL 33401
    Telephone: 561-209-1032
    E-mail: mark.dispoto@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF for electronic delivery to all counsel of record.

/s/ *Mark Dispoto*
Mark Dispoto
Assistant United States Attorney