UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80039-CR-ROSENBERG

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

SUZANNE ELLEN KAYE,
        Defendant.
_____/

## ORDER GRANTING GOVERNMENT'S MOTION TO EXCLUDE DEFENSE EXPERT

This Cause comes before the Court upon the United States' Motion to Exclude Defense Expert ("the Motion"). DE 62. The Court held a hearing on this Motion on March 16, 2022 (the "Hearing"; citations as "Hrg. Tr."). The Court has reviewed the Motion, Defendant's Response [DE 65], and the Government's Reply [DE 69], and is otherwise fully apprised of the premises. For the reasons set forth below, the Government's Motion to Exclude is **GRANTED**.

### I.    BACKGROUND

Defendant, Suzanne Kaye, has been charged with threatening to injure agents of the Federal Bureau of Investigation in violation of 18 U.S.C. § 875(c) based on statements she made in a video posted to TikTok under the moniker @suzannekaye1. DE 17. The video depicts Ms. Kaye saying,

> Friends, I'm here to let you know that I need a drink. Just got a call from the FBI. They wanna come talk to me about my visit to [Washington,] D.C. on January 6th. I told them, "Bro, I ain't gonna talk to you unless I have counsel. And being that I can't afford counsel right now, you're going to have to arrest me so I can exercise my rights to counsel. And being that you don't even know where I live and you have to ask me, I ain't talking to you, either."
> You just spent four years persecuting a three-star general with no evidence. You think I'm gonna fu\*\*in' let you come talk to me?! I'm an American. I know my fu\*\*in' rights: my First Amendment Right to Free Speech, my Second

1

>Amendment Right to carry a gun, to shoot your fu**in' ass if you come to my house. So, fu** you. Fu** you following me. I don't fu**ing care. I'm glad you know who I am, motherfu****.

DE 26-1, Exh. A.

In support of her defense, Ms. Kaye seeks to put on expert testimony from a Dr. P. Brooks Fuller at trial. DE 58 (Notice of Expert Testimony). Dr. Fuller has a J.D. and a Ph.D. in Mass Communication with an emphasis on media law and policy. *Id.* at 1. Defendant wishes to call Dr. Fuller to testify about the following subjects:

- "the historical and contemporary protection afforded to controversial political expression that uses violent tropes and inflammatory language as political rhetorical devices";
- "the contextual factors used to distinguish protected political expression from true threats, especially on social media";
- "how individuals build digital identities on social media and ways the speaker's identity and other contextual factors affect their message";
- "how certain aspects of social media communications tend to blunt the impact of charged political expression broadcast to large audiences in social media environments such as TikTok"; and
- "that the video that serves as the basis for the indictment likely does not articulate a true threat" "pursuant to the body of case law on true threats and social media".

*Id.* at 2. At the Hearing, the Defendant represented that Dr. Fuller would ultimately testify that Ms. Kaye's statement that is the subject of this prosecution did not amount to a true threat. Hrg. Tr. 126: 12-22; 130: 14-15.

The Government objects to the entirety of Dr. Fuller's proposed testimony on the following grounds: (1) the expert is not qualified to render an opinion about the aforementioned topics, thereby violating Federal Rule of Evidence 702; (2) the proposed expert testimony fails to satisfy Federal Rule of Evidence 702(a) because the content is not helpful to the jury; (3) the proposed testimony that Ms. Kaye's statements do not constitute a true threat is barred by Federal Rule of

2

Evidence 704; (4) the subject matter of his testimony would "encroach on the Court's exclusive authority to provide the jury with the relevant law," DE 62 at 2; and (5) "the probative value of the expert's opinion about the defendant's mental state is substantially outweighed by the risk of unfair prejudice, confusion, or delay," in violation of Rule 403, *id.* at 3.

## II.   DISCUSSION

For the purposes of its analysis, the Court will break down the subjects of the proposed expert testimony into two buckets**: (1) case-specific testimony**, like whether, based on Dr. Fuller's expertise, Ms. Kaye articulated a true threat, whether reasonable persons viewing the video would have regarded it as such, and how contextual clues (e.g., tone, non-verbal cues, use of profanity, subject matter) would affect one's perception of the video; and **(2) generalized testimony** about mass media, including the way people interact on social media, how people generally conduct themselves in politically sensitive or fraught contexts, the historical use of violence as a political rhetorical device, and the history of legal protections for political speech. The Court will address the admissibility of each bucket under the Federal Rules of Evidence. But before doing so, the Court will address whether the Dr. Fuller satisfies the qualification requirements of Rule 702.

### A.  Expert's Qualifications

Federal Rule of Evidence 702 governs the admission of expert testimony and codifies the standards set forth in the seminal *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Rule 702 provides:

> *A witness who is qualified as an expert by knowledge, skill, experience, training, or education* may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

3

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a) (emphasis added). Dr. Fuller is undoubtedly an expert in the area of media and mass communication, particularly with respect to political speech. His credentials are impressive, having earned a B.A., J.D., and Ph.D. from excellent academic institutions and having published extensively on the subject of his proposed testimony. He is an expert by nature of his knowledge, skill, experience, training, and education.

### B. Bucket 1: Case-Specific Testimony

Dr. Fuller's case-specific testimony is barred on the following grounds.

#### 1. *Testimony Takes the Form of a Legal Conclusion*

Dr. Fuller's overarching testimony will be that, in his expert opinion, Ms. Kaye did not articulate a true threat under the current legal standard. Hrg. Tr. 21:7-11: Defendant argues that Dr. Fuller should be allowed to offer this testimony because Federal Rule of Evidence 704 does not preclude experts from testifying about an ultimate issue. Hrg. Tr. 137: 4-9. True, experts are allowed to testify on ultimate issues of *fact*.[1] But the law has long prohibited experts from giving opinions in the form of *legal* conclusions. *E.g.*, *United States v. Long*, 300 F. App'x 804, 814 (11th Cir. 2008) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).[2] An expert gives an opinion in the form of a legal conclusion when she opines on the "legal implications of conduct." *Montgomery*,

---

[1] Aside from, of course, the exception in Rule 704(b), which provides, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."

[2] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

898 F.2d at 1541. Legal conclusions are barred because they tell the jury what result to reach and because the Court must be the jury's only source of the law. *Id.* (citing Fed. R. Evid. 704 and Rule 704 Committee Notes).

Testimony that the Defendant did or did not satisfy the elements of a true threat is, undoubtedly, a legal conclusion on an ultimate issue. It is a legal conclusion because answering the question of whether Ms. Kaye articulated a true threat calls on the expert to testify about the "legal implications" of Ms. Kaye's conduct. *Id.* And whether she articulated a true threat is an ultimate issue because it is an element of the offense: under 18 U.S.C. § 875(c), Ms. Kaye must have knowingly transmitted a true threat in interstate commerce and must have sent the message with intent to communicate a true threat. *See* Eleventh Circuit Criminal Pattern Jury Instruction O30.3. Whether or not a true threat existed is central to the first element of 875(c) and remains solely within the jury's province. Accordingly, Dr. Fuller may not testify that Ms. Kaye's statement was not a true threat.

### 2. *Testimony is Not Helpful*

Second, Dr. Fuller intends to testify about how a reasonable person would have viewed Ms. Kaye's statement. More specifically, Dr. Fuller would testify about the effect of contextual factors (like Ms. Kaye's use of profanity, tone, hyperbole, non-verbal cues, etc.) on the viewer. It is the Defendant's position that the jury could not accurately determine whether Ms. Kaye violated 18 U.S.C. § 875(c) without expert testimony about the nature of communication, political speech, and linguistics. Hrg. Tr. 108:24-109:8. The Government argues that the jury is fully capable of assessing the video under the reasonable person standard without expert testimony. The Court agrees with the Government.

This testimony is barred under Rule 702(a), which requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony about how a reasonable person would interpret Ms. Kaye's statements would not help the jury form its opinion. The very point of the reasonable person standard is that lay people are supposed to use their own experience and judgment to reach a conclusion without the guidance of an expert. Likewise, jurors are capable of evaluating the video and its contextual clues without the testimony of an expert. As social creatures, humans recognize and interpret social cues, tone, rhetoric, non-verbal conduct, and more every single day. These contextual clues guide our every interaction. Therefore, the jury does not need expert testimony on how those factors impact reasonable people's perception of this particular communication. Such testimony would not help the jury understand the evidence or determine a fact in issue.

Finally, to the extent that Dr. Fuller would testify that a reasonable person would not view the video as a true threat, such testimony is a legal conclusion on an ultimate issue barred by Rule 704. *See supra* Section II.B.1.

### 3. *Testimony Creates Risk of Confusing the Issues*

Lastly, the case-specific testimony is barred under Rule 403 because its probative value is substantially outweighed by a danger of confusing the issues. Under Rule 403, the Court views the "evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Edouard*, 485 F.3d 1324, 1344 n.8 (11th Cir. 2007). Broadly speaking, a risk of "confusing the issues" means that the evidence creates a significant possibility that the jury may misunderstand how to apply the law to the facts of the

6

case. Here, even when the Court considers the evidence in the light most favorable to admission, admitting Dr. Fuller's case-specific testimony would create an unjustifiable risk that the jury would substitute an expert's evaluation of the video for their own. *Id.*

Dr. Fuller's testimony would create confusion about how the jury should consider the expert testimony on the reasonable person standard when it evaluates Ms. Kaye's intent or knowledge. *See* Eleventh Circuit Criminal Pattern Jury Instruction O30.3. Defendant has reassured the Court that Dr. Fuller will not testify about Ms. Kaye's mental state at the time of the offense because he will only testify as to whether the statements constituted a true threat—not whether Ms. Kaye intended them to be perceived as a true threat or knew that they would be perceived that way.[3] But allowing Dr. Fuller to testify about the video's "lack of threatening impact" is effectively an end-run around the prohibition in 704(b), in that the jury might conflate his expert evaluation of whether a true threat existed with Ms. Kaye's intent for how the statements would be perceived. In other words, the Court is concerned that if Dr. Fuller testifies that the statements lack "threatening impact," the jury might then take this testimony as an indication that Ms. Kaye could not have intended it to be a true threat. Hrg. Tr. 84:6-8.

Likewise, providing expert testimony on how to evaluate speech would likely confuse the jury about the very nature of the reasonable person standard. The reasonable person standard presupposes non-expertise—in other words, the standard assumes that lay people are capable of passing judgment without expert help. If the Court were to admit Dr. Fuller's case-specific testimony, this evidence would confuse the jury as to what the "reasonable person" standard really

---

3 Such testimony is barred by Federal Rule of Evidence 704(b): "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."

7

is. Lastly, if Dr. Fuller testified about the contextual factors of political speech, historical context, and "meaning making" of the speech as applied to the video, such testimony would suggest to the jury that those contextual factors are elements it must consider when deciding whether the video presented a true threat. *See United States v. Hite*, 769 F.3d 1154, 1171-72 (DC Cir. 2014) (affirming district court's decision to exclude expert testimony where the expert testimony would risk suggesting to the jury that a non-element is actually one of the elements of the crime at issue). Because the factors that Dr. Fuller would testify to as they relate to the video are not factors of 18 U.S.C. § 875(c), this testimony is barred by Rule 403.

Finally, Dr. Fuller may not testify about how persons would view this video differently based on their political affiliation. For background, Dr. Fuller testified at the Hearing that the TikTok "For You Page" curates content for each specific user that an algorithm predicts will interest that user. Hrg Tr. 57:24-58:4. This means that users are likely to see content, to the extent that it is political, with which they agree. Dr. Fuller then testified extensively about how our political affiliations impact our perception of political speech. With respect to this case, Dr. Fuller testified that a person with left-leaning views would be more likely to flag or report Ms. Kaye's video, which uses traditionally conservative vernacular and espouses right-wing views. Hrg. Tr. 42:23-43:14. Conversely, persons with sympathetic views would be less likely to take violent rhetoric seriously and report the video. Hrg. Tr. 45:15-24. The Court will address the admissibility of this generalized testimony in the next section, but the case-specific testimony risks confusing the jury about who the proverbial reasonable person is. The standard is not "a reasonable person in Ms. Kaye's intended or likely audience" [Hrg. Tr. 85:20-21]—the standard is a "reasonable person." *See* Eleventh Circuit Criminal Pattern Jury Instruction O30.3. And if the Court admits

testimony about how a viewer's political affiliations would impact her perception of Kaye's statements, the jurors may well be confused about whether they should view the statements from the perspective of a sympathetic or antagonistic viewer—or whether this matters at all. But that's exactly the Court's concern: the testimony will distract the jurors from applying the law to the facts of this case. So, for the foregoing reasons, Dr. Fuller may not testify on any of the proposed case-specific topics.

### C. Bucket 2: Generalized Topics

Ms. Kaye also seeks to have Dr. Fuller testify on a range of general issues related to speech, true threats, violence as political rhetoric, and the history of legal protections for that type of rhetoric in the United States. Fascinating as these issues may be as a matter of academic pursuit, the testimony risks confusing the issues, and is thereby barred by Rule 403. Additionally, Dr. Fuller indicated that he would testify about how people create online personas on social media. But because social media is ubiquitous—72 percent of Americans use some form of social media[4]— such testimony would not be helpful to the jury and thereby fails to satisfy Rule 702.

The Court shares effectively the same concerns about the generalized testimony as it does about the case-specific testimony. Primarily, allowing Dr. Fuller to testify about, for example, contextual factors for evaluating speech (like the platform, the use of background music, profanities, references to constitutional amendments, etc.) and for determining the "dominant meaning" of the speech, the history of free speech in America, how people conduct themselves

---

[4] *Social Media Fact Sheet*, Pew Res. Ctr. (Apr. 7, 2021), https://www.pewresearch.org/internet/fact-sheet/social-media/. There are statistical disparities among various demographic groups, but the Court is confident that even if a member of the public doesn't herself use social media, she would probably be familiar with how social media works and how people behave on social media, nevertheless.

social media, and the use of violent rhetoric as a political tool would serve only to complicate the jury's job. Allowing Dr. Fuller to testify on these subjects would only confuse the jury as to what legal and factual considerations they may weigh in reaching their ultimate conclusion. For instance, the history of constitutional protections for political speech that invokes violence may confuse the jury on what law they are to apply. It also does not make the jury's job any easier to determine whether *this* speech constituted a true threat. Likewise, the Court provides instructions on what constitutes a true threat. Allowing expert testimony about other contextual factors will make the jury think that they must consider those factors in their ultimate determination. In short, the Court worries that the jury will overvalue Dr. Fuller's testimony and thereby substitute his expertise for their own independent, reasoned judgment.

      Further, the jury comes in with experience and knowledge. Because of the ubiquity of social media today, jurors are probably highly familiar with how social media works, how people behave on social media, and how speech differs between in-person interactions and online interactions. The vast majority of Americans use social media, and this usage largely transcends age, gender, race, income, education, and geography.[5] Undoubtedly, an even greater proportion of the population is aware, through the news, experience, and interactions, of how people act on social media—including the differences between how people behave online versus in-person, and how people curate content and create personal brands—even without being users themselves. In short, social media is an inextricable part of our social conscience today. Jurors are thus well-

---

[5] *Id.* For example, 61 percent of men use Facebook, compared to 77 percent of women. 70 percent of people making less than $30,000 annually use Facebook compared to 76 percent of people making between $30,000-50,000; 61 percent of those making between $50,000 and 75,000 and 70 percent of people making more than $75,000 report using Facebook. So, there are disparities, but overall, the data demonstrates widespread usage and familiarity across the U.S. population writ large.

10

equipped with their own knowledge and experience to comprehend and evaluate the contextual factors of the video at issue. Dr. Fuller's testimony on these topics would therefore be unhelpful under Rule 702.

## III.   CONCLUSION

It is for the foregoing reasons that the Government's Motion to Exclude Defense Expert [DE 62] is **GRANTED**.

**DONE AND ORDERED** in chambers in West Palm Beach, Florida, this 23rd day of March, 2022.

_____
Robin L. Rosenberg
UNITED STATES DISTRICT JUDGE