UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80039-CR-ROSENBERG

UNITED STATES OF AMERICA,
    Plaintiff,
vs.

SUZANNE ELLEN KAYE,
    Defendant.
_____/

## **DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

I will always remember the sounds.[1] The startling demand of my investigator, Sarah Shannon, who loudly and urgently said she needed help. She was holding Mrs. Kaye's entire bodyweight as Mrs. Kaye lost consciousness and started full-body convulsions. Next, I remember the sounds of Mrs. Kaye choking on her saliva and, eventually, vomit during her seizures. While fraught, we attempted to roll her limp body on the ground from back to side to back again to best allow for breathing. The sounds of her breathing and the silence when she stopped became the most important sounds in the courtroom. I remember the tearful, punch-in-the-gut, pleas of my investigator, asking Mrs. Kaye not to leave her newborn granddaughter, not to make her tell Mrs. Kaye's son that his mom was dead. And, seemingly in response, the loud,

---

[1] Because there is no record of the severity of Mrs. Kaye's seizures in the courtroom following the jury verdict, undersigned counsel and co-counsel supply the following facts to support the record. Further, pursuant to 28 U.S.C. § 1746, undersigned counsel Kristy Militello and Scott Berry declare under penalty of perjury that the forgoing observations are true and correct to the best of their recollection.

1

guttural, desperate gasps of breath, after agonizingly long periods of non-breathing and what seemed, sounded, and looked like death.

We franticly plead for help. Eventually, the quiet calm of the paramedics' arrival with their softly beeping machines. There were discussions about the 25 minutes that Mrs. Kaye had been seizing in the courtroom, her lack of easily accessible veins, and the frequent need for hospitals to provide intramuscular injections. I remember the paramedics and their contrasting, composed response and their immediate injection(s) of life-saving medicines. But it was the sounds that preceded their arrival that gave me flashbacks at night, still give me chills, and haunted me for weeks.

For my co-counsel Scott Berry, it was Mrs. Kaye's eyes. He will never forget the look in Mrs. Kaye's eyes when life left her body. Repeatedly.

We did not know at the time exactly what we were witnessing. We knew these full-bodied, vomit-inducing seizures were worse than the brief, mild seizure during her trial testimony the day before. She did not lose consciousness that time. The day before, our investigator was able to sit with her, and Mrs. Kaye did not appear to be on the brink of death. We now know how close to death she really was that day when the stress of her possible remand caused her body to enter into potentially deadly seizures.

Grand Mal seizures, also called Tonic Clonic seizures, should resolve in a few minutes. *Tonic-Clonic (Grand Mal) Seizures*, Johns Hopkins Medicine, available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/epilepsy/tonic-

clonic-grand-mal-seizures. Tonic Clonic seizures involve two phases: 1) the Tonic phase (usually 10-30 seconds) when the person may pass out and the muscles go rigid and 2) the Clonic phase (usually 30 seconds-60 seconds) when the person engages in full-body spasms. *Tonic-Clonic (Grand Mal) Seizure,* Cleveland Clinic, available at https://my.clevelandclinic.org/health/diseases/22788-tonic-clonic-grand-mal-seizure. After a seizure, most people wake up and return to how they felt before the seizure. *Id.*

Status epilepticus occurs when a seizure lasts for more than five minutes or when another seizures starts before the person recovers from the first seizure. *Id.* "Status epilepticus is a life-threatening medical emergency and can cause permanent brain damage or death." *Id.* In fact the "longer that status epilepticus lasts, the harder it is for healthcare providers to stop the seizure causing it. Long-lasting status epilepticus is also more likely to cause brain damage or death." *Id.* Therefore, status epilepticus, or seizures lasting more than 5 minutes, are a life-threatening medical emergency. *Id.*

Prolonged Status epilepticus can lead to "cardiac dysrhythmia, metabolic derangements, autonomic dysfunction, neurogenic pulmonary edema, hyperthermia, rhabdomyolysis, and pulmonary aspiration." Cherian A, Thomas SV. *Status epilepticus.* Ann Indian Acad Neurol. 2009 Jul;12(3):140-53. doi: 10.4103/0972-2327.56312. PMID: 20174493; PMCID: PMC2824929, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2824929/. Permanent neurologic damage can also occur. *Id.*

While undersigned counsel are not doctors, we can speak to our observations. Mrs. Kaye did not "recover" in between her seizures. She did not regain consciousness. She just stopped breathing. Her seizures rolled one into the other and lasted about 25 minutes total. By the end, she was turning blue as her periods of respiratory arrest progressively worsened. Undersigned counsel and her investigator ripped off Mrs. Kaye shirt and put the AED (automated external defibrillator) patches on her bare skin. That's when the paramedics finally arrived.

Mrs. Kaye barely survived death. And since that experience, she has physically changed. During consultations with counsel, she appears tired, as if her energy has been depleted. She is interested and engaged in the conversation, but she sounds exhausted. Thankfully, she is alive, present, and has the capacity to consult with counsel. But she is not the same.

The awful experience at the end of trial led to one of three hospitalizations that Mrs. Kaye has endured as part of this case. *See* DE 141 at pgs 18-19. At the time of her arrest, February 17, 2021, she suffered seizures and was hospitalized. *Id*. Mrs. Kaye was hospitalized a second time, April 15, 2021, when she tried to abstain from medical marijuana to comply with a pretrial release directive. *Id*. The third time was at the end of our trial, an incident we all witnessed.

Shockingly, the seizures that occurred in court were not even the worst she has experienced. In 2019 she was put in a medically induced coma and placed on a ventilator as a result of her seizures. *See* DE 141 at pgs 15-16. Mrs. Kaye is lucky to be alive.

This case is not a death-penalty case. Any jail sentence could result in Mrs. Kaye's premature death. The three hospitalizations during this case all occurred in response to the stress and fear of incarceration or from her abstention from medical marijuana, which is unavailable to her in federal prison. The risk to Mrs. Kaye's health is simply too great. Mrs. Kaye's health and medical history warrant a downward variance. For these reasons, and the legal reasons articulated in her PSI Objections at DE 141, Mrs. Kaye respectfully requests that this Court impose a downward variance to time served.

Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
450 South Australian Avenue, Suite 500
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

*s/ Scott Berry*
Scott Berry
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0525561
450 South Australian Avenue, Suite 500
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Scott_Berry@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello