# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 14, 2024

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY _____ JG _____ D.C.

Feb 14, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number:  23-11423-X
Case Style: USA v. Suzanne Ellen Kaye
District Court Docket No: 9:21-cr-80039-RLR-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers
General Information:   404-335-6100       Attorney Admissions:        404-335-6122
Case Administration:   404-335-6135       Capital Cases:              404-335-6200
CM/ECF Help Desk:      404-335-6125       Cases Set for Oral Argument: 404-335-6141

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11423

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SUZANNE ELLEN KAYE,
a.k.a. Muckbang01,
a.k.a. suzannekaye3,
a.k.a. agent of Angry Patriot Hippie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cr-80039-RLR-1

_____

ISSUED AS MANDATE 2/14/2024

2                                                                 23-11423

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: January 16, 2024

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE 2/14/2024

[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11423

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SUZANNE ELLEN KAYE,
a.k.a. Muckbang01,
a.k.a. suzannekaye3,
a.k.a. agent of Angry Patriot Hippie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

2                    Opinion of the Court                    23-11423

D.C. Docket No. 9:21-cr-80039-RLR-1

_____

Before ROSENBAUM, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Suzanne Kaye was convicted by a jury of one count of violating 18 U.S.C. § 875(c) for making threats to shoot an FBI agent in videos she posted to her social-media accounts. On appeal, Kaye argues that the district court erred by excluding her expert and failing to adopt three of her requested jury instructions. After careful consideration, we affirm.

## I.

We take the facts below from the evidence adduced at trial.

Kaye, under her username "Angry Patriot Hippie," began posting videos on social media in 2020 to "get famous." Among the content she shared, Kaye posted videos with political content.

On January 16, 2021, ten days after the events at the Capitol on January 6, 2021, the FBI received a tip about Kaye and January 6th. The FBI referred the tip to its office in West Palm Beach, Florida, which assigned Agent Arthur Smith to interview Kaye. After attempting to visit Kaye at her last known address, Agent Smith eventually connected with Kaye over the phone. Kaye told Agent

23-11423                    Opinion of the Court                           3

Smith that she wasn't at the Capitol on January 6th.[1]  Still, she invited Agent Smith to visit her home to chat with her, and she gave him her home address.

Agent Smith told Kaye he would visit her residence later that day, but as it turned out, he was ultimately unable to do so.  Instead, Agent Smith called Kaye and left a voicemail message to let her know that he would not be coming, but he never heard back from her.  For her part, Kaye did not receive the message.  So, she testified, when nobody showed up, she concluded that the call had been a "joke."

Kaye took this "joke" as an idea for a post for her social-media accounts, and she wrote a script for a video "parody[ing]" her experience with Agent Smith.  According to Kaye, "[t]he video was supposed to have shown a nervous person taking a swig of whiskey[2] out of a bottle and then retelling the story of what happened on the telephone."  Kaye made several different takes of the video, publicly posting two versions to different social-media accounts on the evening of January 31, 2021.

In a 50-second video posted on Facebook entitled, "Fuck the FBI," Kaye stated the following:

_____

[1] At trial, the district court informed the venire that Kaye was not alleged to have been present at the Capitol for the events of January 6th, and she was not charged with any events related to January 6th.

[2] According to Kaye, the whiskey bottle contained iced tea.

> Hello my TikTok patriot friends.  Gotta have a drink.
> [Drinks from the whiskey bottle]  Just got a call from
> the FBI.  They want to come talk to me about my visit
> to D.C. on January 6th.  I told them: you can't come
> and talk to me unless I have counsel.  And being that
> I can't afford counsel, you'll have to arrest me so I can
> use my right of counsel.  You guys just spent four
> years persecuting a three-star general with no evi-
> dence.[3]  You think I'm gonna let you come fucking
> talk to me?  You're out your motherfucking mind,
> bro.  That's not gonna happen.  I'm a fucking patriot.
> And I exercise my First Amendment right on my free-
> dom of speech, and my Second Amendment right to
> shoot your fucking ass if you come here.

Kaye also posted this video to Instagram.  This video formed the
basis for Count One.

    The second video at issue in this case, a 59-second video
Kaye also posted on Instagram, was likewise titled "Fuck the FBI."
But in this longer take, Kaye's tone was noticeably angrier:

> Friends.  I'm here to let you know I need a drink.
> [Drinks from the whiskey bottle]  Just got a call from
> the FBI.  They want to come talk to me about my visit
> to D.C. on January 6th.  I told them: Bro, I ain't gonna
> talk to you unless I have counsel.  And being that I
> can't afford counsel right now, you're gonna have to
> arrest me so I can exercise my right to counsel.  And

---

[3] Kaye testified that she was referring to Michael Flynn, whom she viewed as
having been persecuted by the FBI.

> being that you don't even know where I live and you
> have to ask me, I ain't talking to you either.  You just
> spent four years persecuting a three-star general with
> no evidence.  You think I'm gonna fucking let you
> come talk to me?  I'm an American. I know my fuck-
> ing rights.  My First Amendment right to free speech.
> My Second Amendment right to carry a gun, to shoot
> your fucking ass if you come to my house.  So fuck
> you.  Fuck you following me.  I don't fucking care.
> I'm glad you know who I am, motherfucker.

Kaye posted this same video on her TikTok account as well.  In the
TikTok version of the second video, Kaye added a cover of the Po-
lice song "Every Breath You Take" as background music because,
she said, the FBI was "watching" Kaye, like the lyrics in the song.
This second video formed the basis for Count Two.  While Agent
Smith acknowledged the videos related to each count were similar,
he distinguished the two videos by the angle at which they were
shot, the "tone" of each video, and the inclusion of music in the
second video.

    Kaye testified that she did not intend to threaten the FBI, and
that the video was just "a freaking TikTok."  She also testified that
she did not own any guns because she has a marijuana license, and
she'd "rather smoke than shoot."  Kaye did not tag or otherwise
direct the videos to the FBI or Agent Smith's attention.

    Unaware of the videos, Agent Smith went to Kaye's address
unannounced on February 2, 2021.  When no one answered the
door, Agent Smith called Kaye.  But she did not answer.  At that

6              Opinion of the Court              23-11423

point, Agent Smith left, and he and his supervisor decided to "close down" the lead related to Kaye.

On February 8, 2021, a second tip alerted the FBI about Kaye's videos. Because of the perceived threat to an agent's life, the FBI sent the tip and the videos to the West Palm Beach Office with priority status. After receiving the video from his supervisor, Agent Smith understood the video as "a threat to shoot me if I go [to Kaye's house]."

Law enforcement arrested Kaye, and a grand jury charged her with two counts of violating § 875(c), one for each video. The district court found that whether Kaye's statements constituted a "true threat" and were therefore unprotected by the First Amendment presented a question for the trier of fact, so Kaye's case proceeded to trial.

Before trial, the district court issued several rulings that Kaye now appeals.

*First*, the district court granted the government's motion to exclude Kaye's media law and policy expert, Dr. Brooks Fuller. *United States v. Kaye*, No. 21-80039-CR, 2022 WL 860380 (S.D. Fla. Mar. 23, 2022). Kaye gave notice of her intent to call Dr. Fuller to "testify to the historical and contemporary protection afforded to controversial political expression" and to opine that the videos "likely do[] not articulate a true threat in violation of 18 U.S.C. § 875(c)."

After a *Daubert* hearing, the district court granted the government's motion to exclude Dr. Fuller's testimony on three

grounds. *Kaye*, 2022 WL 860380, at *2–5. First, the court found that Dr. Fuller's case-specific testimony took the form of a legal conclusion, which Federal Rule of Evidence 704 bars. *Id.* at *4–5 ("Whether or not a true threat existed is central to the first element of 875(c) and remains solely within the jury's province."). Second, the court determined that the remaining testimony (both case-specific and about media generally) was not helpful under Rule 702(a) because the jury was capable of evaluating how a reasonable person would view the video and its context in social media without the testimony of an expert. *Id.* at *3–4. And third, the court concluded that the testimony created a risk of confusing the issues for the jury under Rule 403 because the jury might conflate Dr. Fuller's evaluation and understanding of the law with the jury's task and the court's instructions. *Id.* at *3–5. For example, the court reasoned, Dr. Fuller's expert testimony could confuse the jury about "the very nature of the reasonable person standard," which "presupposes non-expertise." *Id.* at *4. In short, the court was concerned that Dr. Fuller's testimony would "distract the jurors from applying the law to the facts of this case." *Id.*

*Second*, the court declined to adopt three of Kaye's proposed jury instructions. Kaye requested, and the government opposed, a modified § 875(c) offense instruction, a defense-theory instruction, and an instruction informing the jury that it could not convict Kaye based on her political views.

For the offense instruction, the government asked for the Eleventh Circuit's pattern instruction, which defines "true threat"

as "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being injured." *United States v. Elonis*, 575 U.S. 723 (2015); 11th Cir. Crim. Pattern Instr. O30.3 at 215 (Mar. 10, 2022). Kaye's proposed modified instruction removed the pattern instruction's definition of "true threat" and added two paragraphs about "protected political speech."[4] The court rejected the modification and gave the pattern instruction instead.

---

[4] Kaye's modified instruction proposed omitting the pattern instruction's definition of "true threat" and replacing it with the following:

> An issue in this case is whether the defendant's speech was constitutionally protected political speech or whether it constituted a "true threat." "True threats" encompass statements in which the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. A "true threat" is not the same as crude, reactionary, unpleasant, or offensive language. Speech that merely advocates force or violence, when it does not incite imminent lawless action, is protected under the First Amendment.

> In considering whether speech was a "true threat," you must also consider the entire context in which her speech was made. For example, the Supreme Court has found that telling a group of protestors at an anti-draft political rally at the height of the Vietnam war that "if they ever make me carry a rifle the first man I want to get in my sights" is the president was constitutionally protected political speech and not a true threat. In so doing, the Court considered the entire context in which the statement was made and not solely the defendant's words.

Kaye also requested a defense-theory instruction that contrasted "true threats" with "vehement, caustic, and sometimes unpleasant sharp attacks on public officials" protected by the First Amendment. Although the court gave a defense theory instruction, it cut much of the language Kaye suggested. The court's defense-theory instruction stated that "Kaye contends that her statements were not 'true threats,' but rather, political speech protected by the First Amendment." The instruction did not define political speech, but it again defined a "true threat" as "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being kidnapped, killed, or physically injured." And the court directed that if the jury had a reasonable doubt as to whether Kaye's statements were "true threats," it must find Kaye not guilty. In declining to use Kaye's instruction, the court emphasized its view that although it found Kaye's proposed language to be inappropriate for a jury instruction, "[i]t doesn't mean that the Defense can't make that argument in its closing arguments."

The defense also proposed instructing the jury that it could not "find the Defendant guilty because you disagree with or find distasteful her political views." [5] The court declined to give the

---

[5] Kaye's proposed instruction provided,

> You have just heard testimony and actually observed some exhibits related to what might be considered the Defendant's political views. You must treat this evidence with caution. This evidence alone cannot be used to find the Defendant guilty of the offense charged in the Indictment. It may, however, be

instruction, again opining that the argument was appropriate for closing but not for a jury instruction.  While the court did not give Kaye's proposed political-views instruction, it did instruct the jury "not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government."

After a three-day jury trial, the jury acquitted Kaye on Count One (for the shorter Facebook/Instagram video) but convicted her on Count Two (for the longer Instagram/TikTok video).  The district court sentenced Kaye to 18 months in prison, a downward variance from the guideline range of 27–33 months.

## II.

We begin with Kaye's challenge to the district court's exclusion of her expert.  We review the district court's rulings on the admissibility of expert testimony for abuse of discretion.  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).[6]  So

---

considered by you for limited purposes, such as considering the context in which statements attributed to the Defendant were made, what the Defendant's intent was in making the statement, and her expectation regarding the effects of her statement.  You cannot find the Defendant guilty because you disagree with or find distasteful her political views.

[6] To the extent that Kaye argues that *de novo* review applies to the challenged district-court decisions because her defense involves the First Amendment, she is incorrect.  To be sure, "we review district court decisions of constitutional issues—the most important issues of law—not for abuse of discretion but *de novo*."  *United States v. Shamsid-Deen*, 61 F.4th 935, 944–45 (11th Cir. 2023).  But this appeal does not require the court to resolve any constitutional questions.  So review for abuse of discretion is appropriate.

we will not reverse the decision to exclude an expert "unless the ruling is manifestly erroneous," *id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997)) and it resulted "in a substantial prejudicial effect," *United States v. Machado*, 886 F.3d 1070, 1085 n.14 (11th Cir. 2018).  Here, the district court did not abuse its discretion when it excluded Kaye's expert.

Kaye argues that the district court was obligated to allow her expert to educate the jury or to instruct the jury on the concepts of protected political speech and the First Amendment.  We disagree.

The district court properly excluded Kaye's expert for all the reasons it listed in its thorough opinion, including the one Kaye challenges on appeal:  that Dr. Fuller's testimony about "a long American tradition protecting political speech invoking violence" created a risk of confusing the issues for the jury.  *Kaye*, 2022 WL 860380, at *2–5.  The district court's discretion is "particularly broad" with respect to Rule 403 determinations.  *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1291 (11th Cir. 2014).  And it was well within the district court's discretion to conclude that admitting Dr. Fuller's testimony would create "an unjustifiable risk that the jury would substitute the expert's evaluation of the video for their own."  *Kaye*, 2022 WL 860380, at *3.  The district court similarly acted within its discretion in determining that Dr. Fuller's testimony included an explanation of "contextual factors of political speech" that might confuse the jury as to what law it was supposed to apply.  *Id.* at *4.  Given the "talismanic

significance" that jurors may assign to expert testimony, the district court did not abuse its discretion in excluding all of Dr. Fuller's testimony, including the historical testimony Kaye explicitly challenges on appeal. *See Frazier*, 387 F.3d at 1263. And that is especially so because Dr. Fuller's proposed testimony included impermissible legal conclusions. *Kaye*, 2022 WL 860380, at *2–3, *5 ("Whether or not a true threat existed is central to the first element of 875(c) and remains solely within the jury's province.").

## III.

We next consider Kaye's challenges to the district court's rulings on jury instructions.

"We review the legal correctness of jury instructions *de novo*, but the district court has 'wide discretion as to the style and wording employed.'" *United States v. Caldwell*, 81 F.4th 1160, 1175 (11th Cir. 2023). In other words, so long as the instruction is not inaccurate or misleading, "[w]e apply a deferential standard of review to a trial court's jury instructions." *United States v. Puche*, 350 F.3d 1137, 1148 (11th Cir. 2003).

We review "a district court's refusal to give a proposed jury instruction" for abuse of discretion, *United States v. Watkins*, 42 F.4th 1278, 1282 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1754 (2023), and we "defer on questions of phrasing absent an abuse of discretion," *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). A district court's failure to give an instruction is reversible error only where the requested instruction "(1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with

some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Eckhardt*, 466 F.3d 938, 947–48 (11th Cir. 2006). "Under this standard, we will only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." *Id*. at 947–48.

The district court did not abuse its discretion in instructing the jury.

## A.

We begin with the district court's decision not to give Kaye's proposed offense instruction instead of the pattern instruction and not to provide the entirety of Kaye's proposed defense-theory instruction. At the first consideration, Kaye's proposed instructions fail because her proffered "true threat" instructions were not complete. Although they included the subjective *mens rea* requirement (that the person transmitted the communication for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat), they omitted the objective part of the offense: that is, that a reasonable person would regard the communication as a threat. *Elonis*, 575 U.S. at 726, 740; 11th Cir. Crim. Pattern Instr. O30.3 at 216 (Mar. 10, 2022) ("The Court's opinion [in *Elonis*] did not foreclose the possibility that both an objective and a subjective standard be used in determining whether the defendant knowingly sent a threat. . . . Thus, . . . the objective person standard remains useful in the determination of whether the defendant's statement actually constitutes a 'true threat[.]'"). Kaye's

instructions about "true threats" were not correct because they eliminated this objective component.

Not only were Kaye's proposed "true threat" instructions incomplete, but the instructions the district court gave covered the substance of Kaye's requested instructions: that the jury could convict Kaye "only if" it found a true threat, that political speech is protected by the First Amendment, and that the jury should consider the political-speech exception in this case. And while Kaye may have preferred her proposed version of the instructions, "we afford district courts 'wide discretion to decide on the style and wording of [an] instruction' so long as it 'accurately reflect[s] the law.'" *United States v. Fleury*, 20 F.4th 1353, 1373 (11th Cir. 2021). The purpose of jury instructions "is to give the jury a clear and concise statement of the law applicable to the facts of the case," and that is what the district court did here. *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985).

The district court's decision not to give Kaye's proposed instructions also did not "substantially impair" Kaye's ability to present an effective defense that her speech was political and protected by the First Amendment. *Eckhardt*, 466 F.3d at 947–48. Kaye herself testified that her statements were not true threats, but "parody" for "shock value." And in closing, her counsel argued extensively that her speech was political and protected by the First Amendment. *See Booth v. Pasco Cnty.*, 757 F.3d 1198, 1209 (11th Cir. 2014) (finding no prejudicial harm where the district court refused to give a jury instruction but permitted the plaintiff to make the

same point during closing: "While this solution was unorthodox, it mitigated any prejudice that may have otherwise resulted.").

To the extent that Kaye argues that the court's instructions as a whole were misleading or inaccurate because they did not include a definition of "political speech," Kaye does not cite any cases requiring the court to include such a definition.  When a court properly defines "true threat," as the district court did in this case, the court need not also define what a "true threat" is not.  The jury could convict "only if" Kaye's speech constituted a "true threat" made with knowledge or intent to threaten.  And if the speech satisfied the elements of a true threat, as the jury decided it did in Kaye's case, it was not protected political speech.

The jury reviewed the videos and heard Kaye testify.  After doing so, it rejected the Government's argument that Kaye's first video was a "true threat" but agreed with the Government that Kaye's second, longer video—the one with the angrier tone and more targeted profanity—was a true threat, not a political parody. If anything, we think the split verdict here suggests the jury's careful application of the jury instructions on true threats to the evidence.  As we've noted, the videos have a different quality to them, and the jury was free to reject Kaye's contention that the second video was not a true threat, especially given the repeated nature of the threat.  *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[W]e have said that, when a defendant chooses to testify, he runs the risk that if disbelieved 'the jury might conclude the opposite of his testimony is true.'").

In short, the district court did not abuse its discretion in refusing to adopt Kaye's proposed offense instruction and proposed instruction related to true threats and political speech.

### B.

Next, we address Kaye's proposed instruction directing the jury that it could not convict her based on her "political views." We again conclude that the district court did not abuse its discretion in declining to give the instruction as Kaye requested it.

Instead, the district court instructed the jury that it could not convict Kaye based on prejudice against her: "You must not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government." "[P]rejudice against the Defendant" includes prejudice against Kaye for her political beliefs. And Kaye cannot demonstrate that her defense was impaired or that the jury was otherwise misguided by the instructions given.

Indeed, both Kaye and the Government argued in closing that the jury could not convict Kaye for her political beliefs, with Kaye's attorneys asking the jury "to step away" from their political "tribes" in considering the evidence, and the Government stating that "Ms. Kaye is not on trial . . . . because she expressed her political views."

And though not a part of the jury instructions, before trial began, the court asked the venire, "Is there anyone who cannot be fair and impartial in rendering judgment based on the evidence and the law that I instruct you on if you learn that any of the parties or the witnesses hold political beliefs either contrary to or consistent

with your own political beliefs?"   No one raised their hand. Though not an instruction, this was nonetheless an affirmative representation by the jurors that they would not render a judgment based on differences in political views.

The court instructed the jury not to consider its personal prejudice, and we must presume that it followed that instruction. *United States v. Almanzar*, 634 F.3d 1214, 1222 (11th Cir. 2011).  At bottom, we are not "left with a substantial and eradicable doubt" that the jury convicted Kaye based on her political beliefs. *Eckhardt*, 466 F.3d at 947–48.

### IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 16, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  23-11423-X
Case Style:  USA v. Suzanne Ellen Kaye
District Court Docket No:  9:21-cr-80039-RLR-1

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers
General Information:      404-335-6100    Attorney Admissions:            404-335-6122
Case Administration:     404-335-6135    Capital Cases:                  404-335-6200
CM/ECF Help Desk:    404-335-6125    Cases Set for Oral Argument: 404-335-6141


OPIN-1 Ntc of Issuance of Opinion